**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CDA OF AMERICA INC.,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 01-CV-837** |
| **MIDLAND LIFE INSURANCE CO. et al.,** | : | **JUDGE ALGENON L. MARBLEY**<br>**Magistrate Judge Kemp** |
| **Defendants.** | : | |

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on various Motions in Limine brought by Plaintiff, CDA of America, Inc. ("CDA") and Defendants, Midland Life Insurance Company ("Midland"), Ihor Hron, and Dan Flahive (collectively, "Defendants"). All of the motions have been fully briefed, arguments have been heard on certain of the motions, and the Court rendered decisions on these motions at the final pretrial conference. This Opinion and Order memorializes the Court's ruling on the record. For the reasons set forth at the final pretrial conference and memorialized herein, the Motions in Limine are **GRANTED** in part and **DENIED** in part as follows: (1) Defendants' Motion to Exclude Testimony of Heinz Ickert is **DENIED** [Docket No. 178]; (2) Plaintiff's Motion to Exclude the Testimony of Defendants' Expert, Timothy C. Pfeifer, is **DENIED** [Docket No. 215]; (3) Plaintiff's Motion to Exclude the Testimony of Defendants' Expert, Stephen A. Buser, PhD., is **DENIED** [Docket No. 216]; (4) Defendants' Motion to Exclude Testimony of Dr. John F. Fitzgerald is **DENIED** [Docket No. 221]; (5) Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs" Theory for Plaintiff's Failure to

Comply with the Court's Discovery Order is **DENIED** [Docket No. 191]; (6) Defendants' Motion to Exclude Evidence of Plaintiff's Alleged Development Costs is **DENIED** [Docket No. 222]; (7) Defendants' Motion to Exclude Evidence of Plaintiff's Alleged Development Costs Incurred Prior to CDA's Incorporation and after the Alleged Misappropriation is **DENIED** [Docket No. 224]; (8) Defendants' Motion to Exclude Testimony or Reference to Plaintiff's Alleged "Lost Business" or "Lost Profits" is **GRANTED** in part and **DENIED** in part [Docket No. 194]; (9) Plaintiff's Motion to Withdraw or Amend Defendants' Request for Admission No. 1 is **MOOT** [Docket No. 254]; (10) Defendants' Motion to Exclude References to Earlier Opinion is **GRANTED** [Docket No. 198]; (11) Plaintiff's Motion to Exclude Reference to the Court's Order and Opinion on Summary Judgment During Examination of Witnesses and in Argument to the Jury is **GRANTED** [Docket No. 211]; (12) Plaintiff's Motion to Seal the Courtroom and Seal the Trial Transcript is **GRANTED** in part and **DENIED** in part [Docket No. 210]; (13) Plaintiff's Motion to Exclude Evidence Relating to Plaintiff's Settlement with Professional Direct Agency, Inc. ("Pivot") is **GRANTED** [Docket No. 214]; (14) Defendants' Motion to Exclude Evidence of Consideration Received by Certain Witnesses when Swiss re Purchased Midland is **DENIED** [Docket No. 220]; (15) Defendants' Motion for an Adverse Inference regarding Plaintiff's Unproduced Conservation Contracts is **DENIED** [Docket No. 223]; (16) Defendants' Motion to Exclude Evidence of Plaintiff's Litigation Costs, Alleged Harm to Plaintiff's Reputation, and References to "Poisoning" of the Conservation Market is **DENIED** [Docket No. 268].

## II. STANDARD OF REVIEW

Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002) (referencing *Jonasson v. Lutheran Child & Family Serv.*, 115 F.3d 436, 440 (7th Cir. 1997)). Courts have the power to exclude evidence in limine only when the evidence is *clearly inadmissible* on all potential grounds. *Id*. (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials) (emphasis added).

Unless evidence meets this high standard, however, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in [their] proper context. *Bouchard*, 213 F. Supp. 2d at 810 (citations omitted). Denial of a motion in limine does not necessarily mean that without the context of trial, courts are unable to determine whether the evidence in question should be excluded. *Id*. Courts will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *Id*. (citing *Luce*, 469 U.S. at 41) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.")).

Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* FED. R. EV. 401. Generally, "[a]ll relevant evidence is admissible," unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence." *See* FED. R. EV. 402 & 403. The Court must apply the above analysis of each party's motions in limine. The Court's analysis follows.

## III. ANALYSIS

### A. Motions by Both Parties to Exclude Expert Testimony

Both parties have filed a number of motions pursuant to Federal Rules of Evidence 702, 703, and *Daubert v. Merrell Dow Pharm., Inc.*,[1] to exclude the testimony of the experts hired by their opposition. 509 U.S. 579 (1993); *see Bouchard*, 213 F. Supp. 2d at 808.

#### 1. Expert Testimony and *Daubert*

The legal standard to be used in *Daubert* challenges was set forth by Judge Bechtle in his memorandum opinion issued on February 1, 2001:

> Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10. The subject of an expert's testimony must be grounded in methods and procedures of science and based on more than subjective belief or speculation. *Id*. at 589-90. Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id*. at 591-92.
>
> In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id*. at 592-93. Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

---

[1]Defendants filed two separate motions to exclude the testimony of Plaintiff's experts, Heinz Ickert ("Ickert") [Docket No. 178] and Dr. John F. Fitzgerald [Docket No. 221]. Plaintiff also filed two separate motions to exclude the testimony of both of Defendants' experts, Timothy C. Pfeifer ("Pfeifer") [Docket No. 215] and Stephen A. Buser, Ph.D. ("Buser") [Docket No. 216].

> In *Daubert*, the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowledge. These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error, and whether there are standard controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94. These factors are "simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted." *Heller*, 167 F.3d at 152.
>
> In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness' area of expertise." 4 WEINSTEIN'S FED. EVID. § 702.06[1], at 702-52 (2000). In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *See Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382 (5th Cir. 1996).
>
> Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury. *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988); *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740, 768 (D. Md. 1999) (quotation omitted); *Sec. & Exch. Commission v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998).
>
> Lastly, the court "should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. Federal Rule of Evidence 705 "provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id.* (quoting FED. R. EV. 703). Under Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d [717], 748 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985).

The district court is not required to hold a hearing to address a *Daubert* issue. *See Bouchard*, 213 F. Supp. 2d at 809 (citing *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999)).[2]

---

[2]Though Defendants requested a hearing in their Motion to Exclude the Testimony of Plaintiff's Expert, Heinz Ickert, the Court finds a hearing unnecessary.

**a. Whether Testimony of Plaintiff's Expert, Heinz Ickert, is Inadmissible Under Federal Rules of Evidence 702 and 703, and *Daubert* Principles**

Under *Daubert*, the three inquiries to determine admissibility are whether the proposed witness (I) possesses the requisite expertise, (ii) offers testimony derived from scientific, technical, or other specialized knowledge, and (iii) will assist the trier of fact. 509 U.S. at 595. Defendants argue that Ickert's testimony is inadmissible under *Daubert* because he is unqualified to offer his expertise on CDA's damages and because his calculations are "too speculative" to go before a jury. Defs.' Motion to Exclude Ickert's Testimony at 12-13.

The Court, however, is persuaded that Ickert is "qualified" as a damages expert in this case. First, Ickert has over thirty years of experience in public accounting, extensive experience in valuations of a wide variety of business entities and industries (including service, professional, manufacturing, retail, and construction). *See* Pl.'s Response at 8-10. Second, Ickert has performed valuations of intangible assets for purposes of purchase price allocation, impairment analysis, income, gift and estate taxes, and theft of trade secrets. *Id*. Finally, the methods Ickert applies are commonly used and widely accepted by valuation experts and appraisers. *Id*.

Defendants arguments do not end with their assertions that Ickert is not qualified to issue an opinion on damages. Defendants also assert that even if the Court finds Ickert to be "qualified" to offer an expert opinion on CDA's lost revenues, his opinion should be inadmissible because "it is not based on sufficient facts and is inherently unreliable." Defs.' Motion to Exclude Ickert's Testimony at 14. Plaintiff, however counters that, "Mr. Ickert's methods are standard, well known, and well accepted by valuation experts and appraisers. [He used]. . . the cost approach, the income approach, and the market approach. These are three common approaches used by valuation experts with which anyone in the field is familiar." Pl.'s

Response at 10. Plaintiff goes into considerable detail about Ickert's analyses in its Memorandum Contra. *Id*. at 10-14. Finding him to be a qualified damages expert, and finding his approach reliable, the Court is persuaded that Ickert's testimony is sufficient under *Daubert* to be put before a jury. Thus, Defendants' motion to exclude Ickert's testimony is **DENIED** [Docket No. 178].

**b. Whether Testimony of Defendants' Expert, Timothy C. Pfeifer, is Inadmissible under Federal Rules of Evidence 702 and 703, and *Daubert* Principles**

Plaintiff seeks an order excluding the expert testimony of Timothy A. Pfeifer ("Pfeifer"), alleging that he lacks sufficient expertise in the insurance conservation business to qualify as an expert under Federal Rule of Evidence 702. *See* Pl.'s Motion to Exclude Pfeifer's Testimony at 2-4. Specifically, Plaintiff contends that Pfeifer lacks the requisite expertise to testify as an expert regarding whether CDA's conservation program is a "trade secret," and that Pfeifer's lack of education and experience in the field of insurance conservation render him "abjectly unqualified to opine on whether or not CDA's conservation program is a trade secret." *Id*.

In support of its claims, Plaintiff argues that any knowledge, skill, experience or training in insurance conservation belongs to Plaintiff's consulting company, Milliman, not to Plaintiff himself. *Id*. at 4. Though Plaintiff has crafted a detailed argument in its effort to discredit Pfeifer's substantial background in insurance conservation, the Court is persuaded that Pfeifer has significant familiarity with insurance conservation. *See* Defs.' Memo Contra at 2-4.[3] This Court, therefore, finds Pfeifer's testimony to be admissible at trial.

---

[3]Pfeifer's curriculum vitae, which provides evidence of his extensive experience in the arena of insurance conservation, also shows past participation as a damages consultation in a number of past legal disputes. *See* Pl.'s Motion to Exclude Pfeifer's Testimony, Ex. 1.

In the alternative, Defendants suggest that Plaintiff's testimony should be excluded because it violates Federal Rule of Evidence 704[4] because courts prohibit experts from offering testimony that amount to nothing more than legal conclusions. *See Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994). Courts, such as the Second Circuit, caution that, "[t]he liberal rules governing expert testimony. . . were not designed to open the door for the admission of all sorts of expert opinions, thereby trespassing on the province of the jury and the trial court." *See Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 79 F. Supp. 2d 252 (W.D.N.Y. 2000) (citing *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993)). Simply put, testimony that is designed to instruct the jury on the applicable law is not admissible at trial because, by purporting to do what lies with the exclusive province of the court, it cannot be helpful to the jury. *Id*. at 140. According to the Sixth Circuit, "Rule 704 removes the general 'proscription against opinions on ultimate issues and shift[s] the focus to whether the testimony is otherwise admissible.'" *See United States v. Sheffey*, 57 F.3d 1419, 1425 (6th Cir. 1995) (citing *Torres v. County of Oakland*, 758 F.2d 147, 149 & n.1 (6th Cir. 1985)).

In this case, Plaintiff argues that Pfeifer's opinions as to whether CDA's insurance conservation program constitutes a "trade secret" should be inadmissible under Rule 704 to the extent that they involve Pfeifer's personal definition of "trade secret." *See e.g.*, *Bausch & Lomb, Inc.*, 79 F. Supp. 2d at 252 (finding that expert testimony regarding what is a trade secret and what constitutes misappropriation is inadmissible as a legal conclusion); *Cargill, Inc. v. Sears*

---

[4][T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *See* FED. R. EV. 704.

*Petroleum & Transportation Co.*, 334 F. Supp. 2d 197 (N.D.N.Y. 2004) (same); *SL Montevideo Tech., Inc. v. Eaton Aero., LLC*, 2005 U.S. Dist. LEXIS 16650, *20-21 (D. Minn. 2005) (same).

Defendants counter, however, that Plaintiff's arguments ironically attempt to exclude Pfeifer for "refusing to offer improper and inadmissible legal conclusions." According to Defendants, though Plaintiff insists that, "Mr. Pfeifer could offer no opinion as to any similarities, difference, or relationship between the terms 'confidential, proprietary, and trade secrets,'" it is more accurate to explain that when Plaintiff asked Pfeifer "whether the terms, confidential, proprietary, and trade secrets are the same or different or interrelated in some way, Pfeifer stated that he had no "legal opinion," but could "identify with the terms in the way they are used by people in the actuary arena." Pfeifer Dep. at 24.

Considering the merits of both parties' arguments, as well as the deposition testimony of Pfeifer, the Court **DENIES** Plaintiff's motion to exclude Pfeifer's testimony both under *Daubert* and under principles of Federal Rule of Evidence 704. At trial, however, Defendants must ensure that Pfeifer's testimony does not turn to the issue of whether or not CDA's insurance conservation program constituted a "trade secret," as that would, as a matter of law, encroach upon the province of the jury in breach of Federal Rule of Evidence 704. [Docket No. 215].

**c. Whether Testimony of Defendants' Expert, Dr. Stephen A. Buser, is Inadmissible Under *Daubert***

Defendants hired Dr. Stephen A. Buser ("Buser") as a rebuttal witness whose role is to analyze and help the jury understand Plaintiff's theories of damages, including those set forth by Ickert, Plaintiff's purported damages expert. Buser has degrees in economics from Boston College (Ph.D.) and Princeton (A.B.), has taught at universities nation-wide (including MIT, University of Chicago, and others) at both the undergraduate and graduate level for twenty-seven years, and was Chair of the Department of Finance at The Ohio State University and Associate Dean of the Fisher College of Business.

Though CDA does not attack Buser's qualifications as an expert, the Company claims that Buser should "be prohibited from testifying because he did not inform Plaintiff of a "proper means of calculating damages in this case." *See* Pl.'s Motion to Exclude Buser's Testimony at 4-5. As such, Plaintiff seeks an order to exclude the testimony of Buser and contends that Buser's testimony should be stricken under *Daubert* principles because he has repeatedly refused to reveal either the principles or the methodology used to reach his conclusions. *Id*.

Plaintiff's arguments lack merit. Buser is Defendants' rebuttal witness, and, as such, he need not suggest alternative theories of damages, but, instead, is entitled to merely criticize CDA's damages calculations. *See 1st Source Bank v. First Resource Fed. Credit Union*, 167 F.R.D. 61 (N.D. Ind. 1996)[5] (in a similar case, the court allowed defendant's expert to testify as

[5]In *1st Source*, the plaintiff, 1st Source, brought a trademark infringement action against the defendant, First Resource, and claimed the defendant had earned profits due to the use of the infringing mark. *1st Source Bank*, 167 F.R.D. at 61. The defendant retained an expert to demonstrate the economic flaws in the plaintiff's theory of calculating wrongful profits. *Id*. The plaintiff then filed a motion in limine to exclude the expert, arguing that his analysis was "incomplete and without basis." *Id*. The defendant opposed the motion, arguing:

to the weaknesses in plaintiff's theory of damages without offering his own theory); *KW Plastics v. United States Can Co.*, 199 F.R.D. 687, 692 (M.D. Ala. 2000) (noting that a "well-accepted way to criticize damages estimates" is for a defendant's rebuttal expert to point out the assumptions and flaws in a plaintiff's damages calculations). In this case, Buser applies accepted economic principles to Plaintiff's theories of damages to demonstrate that they are fundamentally flawed. Because Plaintiff has not successfully shown that the principles applied by Buser are invalid or do not actually undermine their damages claims, Plaintiff's objections to his testimony under *Daubert* principles fail.

Plaintiff argues that should its *Daubert* argument fail, Buser's testimony should be inadmissible under Federal Rule of Evidence 408. Pl's Motion to exclude Buser's Testimony at 6-8. At the time of Buser's initial analysis of Plaintiff's claim, Plaintiff had not yet hired Ickert as its primary damages expert, and Plaintiff's Settlement Proposal from October 31, 2003 (the "Proposal") served as Buser's only source for information on which to build his first report. The Proposal purports to outline particular categories for which Plaintiff might seek compensation,

---

> First Resource claims that Mr. Wills' opinions are sufficiently specific and supported, especially in light of the fact that *the purpose of his testimony is not to suggest alternative amounts, but instead criticizes 1st Source's calculations*. According to First Resource, Mr. Willis' opinion is that 1st Source's failure to consider other factors renders its calculation of First Resource's profits from the use of the allegedly infringing marks unfounded and speculative, and *to require greater specificity would force First Resource to correct 1st Source's damages theory and calculation*.

*Id*. at 65 (emphasis added). The court in *1st Source* unambiguously rejected the plaintiff's argument, and allowed the expert to testify as to the weaknesses in plaintiff's damages theory without offering his own theory, explaining, "[t]he court agrees that, as a rebuttal expert witness, Mr. Willis may criticize 1st Source's damages theories and calculations without offering alternatives." *Id.*

and Buser initially analyzed the various forms and amounts of damages that Plaintiff has asserted thus far. Plaintiff now seeks to exclude Buser's report based on its argument that the letter upon which he based his findings was "mandated by this Court pursuant to a Court-ordered mediation and includes an $8 [million] settlement demand, which is far less than the amount of damages CDA [plans to] seek from the jury." *Id*. Further, Plaintiff argues that CDA will be unable to cross-examine Buser without the risk of the $8 million number coming out, prejudicing CDA. *Id*. Defendants, on the other hand, contend that Plaintiff's Rule 408 argument is inapplicable to Buser's testimony, and argue that there is no need for either party to mention it in order to fully evaluate Buser's analysis. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979 (6th Cir. 2003) ("Rule 408 'does not require exclusion when the evidence is offered for another purpose."). Weighing the merits of both parties' arguments, the Court is persuaded that Buser's testimony centers on issues that should be decided by the jury, and, therefore, **DENIES** Plaintiff's Motion to exclude Buser's testimony at trial. [Docket No. 216].

**d. Whether Testimony of Plaintiff's Expert, Dr. John Fitzgerald, Jr., is Inadmissible Under *Daubert***

Plaintiff hired Dr. John F. Fitzgerald ("Fitzgerald") as an expert witness to testify about insurance conservation marketing. Defendants seek an order to exclude Fitzgerald's testimony, arguing that under *Daubert*, he is not qualified by "knowledge, skill, experience, training, or education" to testify about insurance conservation marketing at trial. Defs' Motion to Exclude Fitzgerald at 5-6. In the alternative, Defendants seek an order excluding *specific* opinions by Fitzgerald at trial as both irrelevant and impermissible.[6]

---

[6]During the Final Pretrial Conference, the Court agreed to look closely at Defendants' alternative motions to exclude specific opinions by Fitzgerald.

**I. Fitzgerald's Expert Testimony and *Daubert***

Defendants contend that Fitzgerald cannot testify as an expert because, under principles of *Daubert*, his testimony is improper. *See* 509 U.S. at 592 n.10 (1993) (the party offering an expert witness bears the burden of establishing, by a preponderance of the evidence, both the qualifications of its expert and the admissibility of its expert's testimony). The Court is persuaded that Fitzgerald's position teaching insurance law at Ball State University, and his forty-two year involvement in the insurance business is sufficient to qualify him to testify as an expert in this matter. Much like the other experts on both sides - Ickert, Pfeifer, and Buser – the jury is entitled to determine the weight to accord to Fitzgerald's testimony at trial. As such, the Court **DENIES** Defendants' Motion, and it must now consider the viability of Defendants' alternative motion to exclude some of Fitzgerald's specific opinions as "irrelevant and improper."[7] [Docket No. 221].

**ii. Whether the Court Should Exclude Fitzgerald's Specific Opinions**

***1. Whether Fitzgerald's Opinion on the Existence of an Alleged Trade Secret and the Purported Misappropriation is Inadmissible***

In the first opinion of his Expert Report, Fitzgerald opines that CDA's conservation marketing program constituted a "trade secret" that Midland later misappropriated for its own benefit. Defendants argue that the Court should exclude this subject matter as "improper" for expert testimony under Federal Rule of Evidence 704. *See* FED. RULE EV. 704; *Berry*, 25 F.3d at 1348-54 (holding that the trial court should not have admitted the testimony of a proposed

---

[7]At the Final Pre-trial Conference, counsel for the Defendants asked the Court to consider each of its arguments as to Fitzgerald's five opinions independently to determine whether any one of Fitzgerald's opinions could be excluded.

"expert" whose only function was to "tell the jury what result to reach," and noting that expert opinions that are nothing more than legal conclusions are properly excluded because "it is the responsibility of the court, not testifying witnesses, to define legal terms"); *Burkhart v. Washington Metro. Area Transit Authority*, 112 F.3d 1207, 1212-14 (D.C. Cir. 1997) (reversing plaintiff's verdict because plaintiff's expert witness was erroneously permitted to state legal conclusions).

Plaintiff acknowledges that "it would be improper to hold Fitzgerald out as an expert regarding what Ohio law requires to prove the existence of a trade secret or misappropriation, and that such testimony was held inadmissible in the cases cited by Defendants." Plaintiff argues that these issues are distinguishable from those in the instant case, where Fitzgerald's testimony would assist the trier of fact in determining whether CDA's conservation program was unique or generally known in the insurance industry, whether the program outsourced to Pivot was actually a CDA program, and whether Defendant used "improper means" in disclosing CDA's trade secret. *See* Pl.'s Opp. at 8.

As evidenced by the Court's analysis of Pfeifer's expert testimony, Defendants' correctly assert that, under Rule 704, an expert may *not* testify as to a legal conclusion.[8] Further, many courts have specified that an expert may not testify to what constitutes a "trade secret" or a "misappropriation" thereof. *Bausch & Lomb, Inc.*, 79 F. Supp. 2d at 252; *Cargill, Inc.*, 334 F. Supp. 2d at 197; *SL Montevideo Tech., Inc.*, 2005 U.S. Dist. LEXIS 16650, *20-21. Hence, the Court concludes that, at trial, Fitzgerald's testimony as to whether CDA's insurance conservation

---

[8] *See supra* Part III.A.1.b.

program constitutes a trade secret or whether Midland's actions constituted a misappropriation of a trade secret must be excluded.

***2. Whether Fitzgerald's Opinions on Defendants' Alleged Breach of Confidentiality and Alleged Violation of Business Ethics are Irrelevant and Inadmissible***

Fitzgerald's second opinion is that Defendant, Midland, violated the confidentiality clauses in the parties' Marketing Agreements. Fitzgerald also states that he applied "moral principles and standards" such as "integrity and trustworthiness, keeping commitments, and respecting the rights of individuals" to form an "opinion of [Defendants'] unethical behavior."

According to Defendants, issues surrounding Midland's breach of confidentiality clauses are irrelevant to the instant dispute, and the evidence related thereto is inadmissible under Federal Rule of Evidence 402. Defendants argue that because the Court awarded summary judgment to Midland on CDA's claims for breach of confidentiality, due to CDA's own breach of those provisions, it is improper for Fitzgerald to opine on this subject because he has no specialized skill or training that would assist the jury in reaching a decision with respect to issues of confidentiality. Defs.' Motion to Exclude Fitzgerald's Testimony at 10-11.
Should the Court determine that Fitzgerald is indeed an "expert" on business ethics, Plaintiff also argues that Fitzgerald's opinion on Midland's "moral characteristics" should be considered irrelevant to the suit under Federal Rules of Evidence 403 and 404. *Id*.

Plaintiff counters that Defendants' assertions that Fitzgerald has "no specialized knowledge skill or training that would assist a jury" and is "not a business ethicist" are "categorically false." Pl.'s Memo Contra at 9-11. According to Plaintiff, Fitzgerald is a frequent lecturer on insurance and business ethics, as well as practices considered to be unethical. *Id*. Further, Fitzgerald has also "prepared a seminar for insurance agents called insurance ethics, or

ethics for insurance personnel" which was approved by the Indiana State Insurance Department for use in seminars. *Id*. Finally, he was also recently chosen to serve as an ethics judge in a recent Indiana business ethics competition. Accordingly, the Court is persuaded that Fitzgerald is indeed an expert in the area. *Id*.

The Court notes that the issue of "confidentiality" is relevant to CDA's claim for breach of fiduciary duty. *Id*.; *see Johnson Const. Co. v. Kasydar*, 325 N.E.2d 549 (Ohio 1975) (joint venturers owe each other a fiduciary duty, which includes the highest duty of good faith, loyalty, disclosure and fair dealing, and a prohibition against self-dealing). Accordingly the Court will not exclude Fitzgerald's opinions regarding Midland's alleged breach of confidentiality and its alleged violation of business ethics.

***3) Whether Fitzgerald's Opinions Regarding Fiduciary Duty and Alleged Breaches of Fiduciary Duty are not the Proper Subject of Expert Testimony and are, Therefore, Subject to Exclusion***

In his third opinion, Fitzgerald opines that the parties "entered into a joint venture under the terms of [the] Marketing Agreement[s]"; that a "fiduciary relationship was created between CDA and Midland"; and that the fiduciary duty was "breached when Defendants [sic] failed to fully disclose the details of Pivot's conservation plan and engaged in self-dealing by misappropriating the work product of CDA." According to Defendants, the Court should exclude Fitzgerald's opinion on the existence of a "joint venture" or a "fiduciary relationship" between the parties because Fitzgerald should not be permitted to opine on the law. Defs.' Motion to Dismiss Fitzgerald's Testimony at 14; *see CMI-Trading v. Quantum Air*, 98 F.3d 887, 890 (6th Cir. 1996) ("[e]xpert opinion testimony will not assist the jury. . . in determining the factual issue of intent").

Defendants rely upon *CMI-Trading*, in which the Sixth Circuit ruled that expert testimony was inadmissible as to whether the parties intended to enter into a joint venture or whether they had created a joint venture relationship. *See* 98 F.3d at 890. According to the Sixth Circuit:

> [The] opinion regarding whether the parties *intended* to enter a lending relationship or a joint venture relationship was not admissible. *The intent of the parties is an issue within the competence of the jury and expert testimony will not assist the jury*, within the meaning of the Federal Rules of Evidence, in determining the factual issue of intent. [The expert's] opinion concerning whether the parties created a loan relationship rather than a joint venture was likewise inadmissible. *The legal concepts of "loan" and "joint venture" are issues of law and are within the sole competence of the court; "experts" may not testify as to the legal effect of a contract.*

*Id*. (emphasis added). Further, Defendants argue that Fitzgerald's opinion that Midland breached some fiduciary duty, much like the opinion that a misappropriation of trade secret occurred, is an issue solely for the jury. Defs.' Motion at 14.

Plaintiff on the other hand, argues that "[c]ontrary to Defendants' suggestion, CDA has no intention of eliciting testimony from Dr. Fitzgerald regarding the parties' intent to form a joint venture." Pl.'s Memo Contra at 13-14. According to Plaintiff, they do not need Fitzgerald to present such information because the parties clearly expressed their intent in their Marketing Agreements, both of which had identical headings, which read – "JOINT VENTURE." *Id*.

Here the parties have clearly stipulated to their intent to form a joint venture, and the Court, therefore, need not exclude this intent from the record at trial.

***4) Whether Fitzgerald's Opinions Regarding the Adverse Business Relationship Created by Pivot is No Longer Relevant in this Case***

Fitzgerald's fourth opinion is that Pivot "engaged in conduct that was adverse to the parties' business relationship resulting in the destruction of [that] relationship." Defendants contend that because Pivot and the individual Pivot defendants have already been dismissed from this action, Fitzgerald's opinion is no longer relevant to any issue remaining, and should, therefore, be excluded. Defs.' Motion to Exclude Fitzgerald's Testimony at 14.

Plaintiff, however argues that Fitzgerald's opinion that Pivot's conduct created an adverse business relationship between the parties is both relevant and admissible. Pl.'s Memo Contra at 15. According to Plaintiff, when the Court overruled Defendants' Motion for Summary Judgment as to CDA's claim that Midland had aided and abetted Pivot in its misappropriation of Pivot's trade secrets, "aiding and abetting" remained an issue for the jury. *Id*. As such, though Plaintiff has settled its dispute with Pivot, CDA argues that Fitzgerald's opinion that "Pivot engaged in conduct that was adverse to the business relationship between CDA and Midland remains relevant to this dispute."

The Court is persuaded that though Plaintiff has settled its dispute with Pivot, the jury should be able to consider the effect of Pivot's conduct on CDA's aiding and abetting claims against Defendant. Though Pivot's liability is no longer the issue, Fitzgerald's testimony as to Pivot's actions may shed light on CDA's claims against the Defendants. Thus, the Court will not exclude Fitzgerald's opinion as to the adverse business relationship created by Pivot.

***5) Whether Fitzgerald's Opinions on Damages Should be Excluded in this Case***

In his fifth opinion, Fitzgerald opines that the "market value of CDA's services and programs is exemplified by Lincoln Benefit Life's $500,000 payment to CDA." Defendants contend that because "Fitzgerald had not been disclosed as a damages expert by CDA," Fitzgerald's opinion on damages should be inadmissible. *See* Defs.' Motion to Exclude Fitzgerald's Testimony at 14-15.

Plaintiff, however, argues that Defendants' motion is merely an attempt to exclude Fitzgerald's testimony regarding the value of CDA's insurance conservation program by mis-characterizing it as damages. Pl.'s Memo Contra at 14. According to Plaintiff, one of the factors Ohio courts consider in determining the existence of a trade secret is the savings effected and the value to the holder in having the information as against competitors. *Id*. Further, Plaintiff argues that Defendants have intentionally mis-represented Fitzgerald's deposition testimony, altering it to make it sound as if he admits that he does not intend to estimate damages. *Id*. In reality, when asked by Defendants if he was still *not* going to opine to damages, Fitzgerald stated, "I'm just creating here as an example of how valuable their services are anytime an insurance company writes a check for $500,000 to me, wow, they must have a good program, and the fact that CDA – I mean, Midland paid them $155,000, that indicates value to me." *See* Fitzgerald Dep. Accordingly, the Court finds that experts like Fitzgerald may testify that a trade secret has value, and Fitzgerald's testimony on this issue is admissible.

**B. Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs"Theory for Plaintiff's Failure to Comply with the Court's Discovery Order & Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs"**

In addition to their various motions to exclude the testimony of Plaintiff's expert witnesses, Defendants seek the following: (1) an order to exclude evidence of Plaintiff's Alleged Development Costs Theory alleging that Plaintiff failed to comply with the Court's discovery order; and (2) an order to exclude evidence of Plaintiff's alleged development costs as set forth by the testimony of Midland's owner and president, Patrick Sheehan ("Sheehan").[9]

In preparation for trial, Sheehan developed two spreadsheets, both estimating the costs Midland incurred in developing its alleged "trade secret" – the insurance conservation program it sold to CDA. Plaintiff and Sheehan both refer to these costs as CDA's "development costs." To create his spreadsheets, Sheehan used the opinions of Midland's accountant, Larry Bahneman, the Company's estimated annual conservation revenues, and various tax filings from the previous ten years.

Defendants argue that Sheehan's spreadsheets must be excluded at trial because Plaintiff never turned over the documents upon which Sheehan based his calculations. *See, generally,* Defs.' Motion to Exclude "Development Costs" for Failure to Comply. Though at a December 13, 2005 status conference, the Court specifically ordered that Sheehan turn over his supporting documents to Defendants' counsel, they claim that Plaintiff had repeatedly evaded their requests for these documents. *Id*. at 13. As such, pursuant to Federal Rule of Civil Procedure 16, Defendants request that the Court use its authority to sanction Plaintiff for its non-compliance with discovery by excluding Sheehan's evidence altogether. *Id*. at 5. Plaintiff asserts that

[9]Because these motions are inter-related, the Court considers them together.

exclusion is unwarranted because, in response to the Court's order, it has turned over *all* of the documents Sheehan used to develop his testimony. Because Defendants have had multiple opportunities to depose Sheehan, and because the parties' views of the facts are in dispute, the Court is hesitant to issue an order excluding one of Plaintiff's theories of damages outright without more proof of CDA's wrongdoing. Thus, the Court **DENIES** Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs" Theory for Plaintiff's Failure to Comply with the Court's Discovery Order [Docket No. 191], and turns, instead, to consider the merits of Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs."

Defendants argue that Sheehan's estimation of CDA's development costs must be excluded because they are based upon flawed assumption, questionable data, and dubious methodology and therefore inadmissible under *Daubert*; and because they confuse "integrated system conservation" with "product only conservation." Defs.' Motion to Exclude Evidence of "Development Costs" at 6-13. Though Sheehan's testimony is based upon what Defendants contend are "dubious" assumptions, the law augurs in favor of the Plaintiff. It is not for the Court to determine the reliability of Sheehan's calculations. The jury should be able to hear Sheehan's testimony and, thereafter, determine the weight to give it in making a decision. Should Defendants truly find Sheehan's calculations of CDA's development costs to be baseless, they should have an easy time proving their hypothesis at trial. The Court hereby **DENIES** Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs." [Docket No. 222].

### C. Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs" Incurred Prior to CDA's Incorporation and After the Alleged Misappropriation

Defendants also seek an order excluding evidence of any of CDA's alleged development costs incurred prior to CDA's incorporation in October 1993, or subsequent to the alleged trade secret misappropriation in March 1999. Because the Court has previously denied Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs," the foregoing motion is also **DENIED**. [Docket No. 224]. At trial, Plaintiff is entitled to put forth its theory of damages for the jury's consideration, regardless of the date of CDA's incorporation, or the timing of the alleged misappropriation.

### D. Defendants' Motion to Exclude Evidence of Plaintiff's "Lost Business" or "Lost Profits" and Plaintiff's Motion to Withdraw or Amend Defendants' Request for Admission No. 1

#### 1. Defendants' Motion to Exclude Evidence of Plaintiff's "Lost Business" or "Lost Profits"

As discussed above, Plaintiff hired damages expert, Ickert, to determine CDA's purported damages based upon his assessment of the Company's lost revenues. Though the Court previously denied Defendants' Motion to Exclude the Testimony of Ickert,[10] Defendants have also filed a Motion to Exclude Evidence of Plaintiff's "Lost Business" or "Lost Profits," in which they argue that Ickert's testimony fails to set forth the proximate cause necessary to establish the necessary level of connection between CDA's alleged lost profits to Defendants' actions. Defendants seek an order to exclude testimony of Plaintiff's "lost profits" at trial.

Because damages in trade secrets cases are often difficult to ascertain, the Court is persuaded that Plaintiff should be allowed to present Ickert's damages estimates at trial. *See*

---

[10] *See supra* Part III.A.1.a.

O.R.C. § 1333.63(A) (setting forth several measures of damages courts may apply in trade secrets cases and recognizing the difficulty in measuring and proving damages in such cases); *Mid-Michigan Computer Sys. v. Marc Glassman, Inc.*, 416 F.3d 505, 510 (6th Cir. 2005) (plaintiff alleged that defendant misappropriated its trade secret, and the Sixth Circuit held that the district court properly instructed the jury in letting in evidence of plaintiff's lost profits, unjust enrichment, and reasonable royalties as alternative measures of damages); *see also, Scotts Co. v. Cent. Garden & Pet Co.*, 2002 U.S. Dist. LEXIS 26922, *13-14 (S.D. Ohio 2002) (Marbley, J.) (the ultimate amount of recovery on a breach of fiduciary duty claim, if any, must be determined by the jury; therefore, a defendant's effort to narrowly define lost profits and take the issue away from the jury is inconsistent with past precedent)*; Registered Physical Therapists, Inc. v. Jepson*, 584 P.2d 857 (Utah 1978) (where damages attributable to a defendant's wrongdoing are only uncertain as to amount, though they may be difficult to ascertain, they will not be denied).

The inquiry does not end there. At the Final Pre-Trial Conference on March 10, 2006, the parties discussed the merits of Defendants' argument that Ickert's evidence as to CDA's "lost profits" was inadmissible because Plaintiff had previously admitted on the record that it did not plan to seek "lost profits" as damages.[11] Plaintiff filed a Motion pursuant to Federal Rule of Procedure 36(b) to Withdraw or Amend its previous admission, and the parties focused on the form and substance of Ickert's testimony. After thorough debate, Plaintiff conceded that it

[11] In response to Defendants' Request for Admission in February 2005, Plaintiff admitted that "it is not seeking lost profits as a component of any request for damages in this lawsuit."

would no longer seek "lost profits" at trial, but stressed that it still planned to seek "lost *business*" and/or "lost *revenues*" – both of which Ickert discussed in his expert opinions.

Therefore, Defendants' Motion to Exclude Plaintiff's Evidence of "Lost Business" or "Lost Profits" is **GRANTED** in part and **DENIED** in part. [Docket No. 212]. Defendants' Motion to Exclude Plaintiff's Evidence of "Lost Profits" is **GRANTED**; Defendants' Motion to Exclude Plaintiff's Evidence of "Lost Business," however, is **DENIED**. Furthermore, because Plaintiff conceded that it will no longer seek damages based on CDA's lost profits, Plaintiff's Motion to Withdraw or Amend Response to Midland's Request for Admission No. 1 is **MOOT**. [Docket No. 254].

### E. Motions to Exclude References to Court's March 10, 2005 Summary Judgment Order and Opinion

Both parties have brought motions to exclude evidence or references to statements made in the Court's March 10, 2005 Summary Judgment opinion denying Plaintiff summary judgment on all six counts, and granting in part and denying in part Defendants' motions for summary judgment.[12] The Court agrees with the parties' contentions that any extraneous statements made in that Order and Opinion are not binding upon the parties, and that evidence of or references to such statements do not have a tendency to make the existence of any fact of consequence to make the determination of this action more or less probable. Pursuant to Federal Rules 402 and 403, the Court finds the Order and Opinion is too prejudicial to introduce to the jury at trial;

[12]Plaintiff has brought a Motion to Exclude Reference to the Court's Order and Opinion on Summary Judgment During Examination of Witnesses and in Argument to the Jury [Docket No. 211] and Defendants' have brought a Motion to Exclude Reference to Earlier Opinion [Docket No. 198]. Because these motions involve the same issue, the Court will consider them together.

thus, both parties' Motions to exclude references to the Order and Opinion at trial are **GRANTED**. [Docket No.'s 198 & 211].

**F. Plaintiff's Motion to Close the Courtroom and Seal the Trial Transcript and Request for a Hearing**

Plaintiff seeks an order to close the courtroom and seal the trial transcript in light of the proprietary information that will be presented at trial in regards to Plaintiff's alleged "trade secret." Though there is a strong common law presumption in favor of public trials, and though Defendants argue that a closed courtroom will improperly influence the jury, the Court is persuaded that Plaintiff's have presented compelling arguments to protect testimony regarding their alleged "trade secret." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983) ("the open courtroom has been a fundamental feature of the American judicial system" and "there is a strong presumption in favor of openness in both criminal and civil trials"). Finding both parties' arguments well-taken, Plaintiff's motion is **GRANTED** in part and **DENIED** in part. The Court **GRANTS** Plaintiff's motion for all portions of the trial in which parties testify as to what they allege to be a "trade secret." Nevertheless, in support of the strong public policy favoring open proceedings, the Court **DENIES** Plaintiff's motion with respect to all portions of the trial unrelated to testimony of Plaintiff's alleged "trade secret"; therefore, during those portions of the trial, the Court will seal neither the courtroom nor the transcript. [Docket No. 210].

### G. Plaintiff's Motion to Exclude Evidence Relating to Plaintiff's Settlement with Pivot

Plaintiff seeks an order excluding the introduction of any and all evidence relating to the settlement between itself and Pivot, and an order precluding counsel from mentioning the settlement in the presence of the jury. Federal Rule of Evidence 408 precludes the use of settlements to prove liability for or invalidity of a claim or its amount. *See* FED. RULE EV. 408. The Court agrees that Defendants should be prevented from proving the invalidity of Plaintiff's claim through evidence of Plaintiff's settlement with Pivot. *See id*. As such, to the extent that Defendants plan to present evidence of Plaintiff's settlement with Pivot to show the invalidity of Plaintiff's claim or to limit their own liability in this case, the Plaintiff's Motion is **GRANTED**. [Docket No. 214].

### H. Defendants' Motion to Exclude Evidence of Consideration Received by Certain Witnesses when Swiss Re Purchased Midland

Defendants seek an order prohibiting Plaintiff from introducing evidence of any consideration received by witnesses when Midland was sold to Swiss Re, deeming such evidence "unduly prejudicial" under Federal Rule of Evidence 403. The Court finds the reasoning employed in *Kenda v. Pot O'Gold Money Leagues, Inc.* *See* 329 F.3d 216, 229-30 (1st Cir. 2003) to be persuasive. In *Kenda*, both parties disputed, on appeal, whether the evidence a $48 million acquisition of wealth by the defendant following the alleged civil wrongdoing was admissible at trial. *See id*. The First Circuit found the evidence admissible, explaining that, though the evidence presented an unfavorable portrayal of defendant, it was offered in support of plaintiff's claims that defendant had acted improperly. *Id*. In the same vein, the Plaintiff herein should be allowed to present any evidence of consideration Defendants received when Swiss Re

purchased Midland. Though the evidence may be prejudicial to Defendants, as in *Kenda*, it is not *unduly* prejudicial under Federal Rule of Evidence 403. Hence, the Court is persuaded that the jury should be allowed to hear the evidence and determine the weight to attribute to it at trial, and the Motion is **GRANTED**. [Docket No. 220].

**I. Defendants' Motion for an Adverse Inference Regarding Plaintiff's Unproduced Conservation Contracts**

Defendants seek an order establishing an adverse inference as to the contracts that Plaintiff allegedly failed to produce during discovery. Defendant ask the Court to establish that the contracts: (1) did not treat its insurance conservation materials as confidential, and, at most, protected only the existence and terms of the contracts; (2) made no mention of any purported trade secrets belonging to Plaintiff; and (3) expressly gave the carrier with whom Plaintiff contracted the "sole and exclusive" rights to the conservation program. Plaintiff counters that the reason the requested contracts were not produced is that they, in fact, do not *exist*.

The Court is not inclined to consider the imposition of adverse inferences, and the parties should endeavor to resolve this dispute over discovery themselves. *See Worldwide Basketball & Sports Tours, Inc. v. NCAA*, 2003 WL 21750835 (S.D. Ohio July 11, 2003) (Sargus, J.) (finding that the parties should endeavor to resolve the dispute as to allegedly missing documents themselves). Accordingly, the Court **DENIES** Defendants' Motion. [Docket No. 223].

**G. Defendants' Motion to Exclude Evidence of Plaintiff's Litigation Costs, Alleged Harm to Plaintiff's Reputation, and References to "Poisoning" of the Conservation Market**

Defendants seek an order prohibiting Plaintiff from introducing evidence or arguments regarding: (1) litigation costs as "damages"; (2) any alleged harm to Plaintiff's reputation; and (3) any alleged "poisoning" of the insurance conservation market. According to Defendants, the

above evidence is purely "speculative," and to admit such evidence would amount to "reversible error." The Court is persuaded by Plaintiff's argument that "this Court should take neither CDA's nor Defendants' word for how CDA intends to use the evidence referenced above." Instead, this Court should evaluate the legitimacy of CDA's proposed use of the evidence in the context of a trial. Accordingly, the Court **DENIES** Defendants' Motion. [Docket No. 268].

## IV. CONCLUSION

For the foregoing reasons: (1) Defendants' Motion to Exclude Testimony of Heinz Ickert is **DENIED** [Docket No. 178]; (2) Plaintiff's Motion to Exclude the Testimony of Defendants' Expert, Timothy C. Pfeifer, is **DENIED** [Docket No. 215]; (3) Plaintiff's Motion to Exclude the Testimony of Defendants' Expert, Stephen A. Buser, PhD., is **DENIED** [Docket No. 216]; (4) Defendants' Motion to Exclude Testimony of Dr. John F. Fitzgerald is **DENIED** [Docket No. 221]; (5) Defendants' Motion to Exclude Evidence of Plaintiff's Alleged "Development Costs" Theory for Plaintiff's Failure to Comply with the Court's Discovery Order is **DENIED** [Docket No. 191]; (6) Defendants' Motion to Exclude Evidence of Plaintiff's Alleged Development Costs is **DENIED** [Docket No. 222]; (7) Defendants' Motion to Exclude Evidence of Plaintiff's Alleged Development Costs Incurred Prior to CDA's Incorporation and after the Alleged Misappropriation is **DENIED** [Docket No. 224]; (8) Defendants' Motion to Exclude Testimony or Reference to Plaintiff's Alleged "Lost Business" or "Lost Profits" is **GRANTED** in part and **DENIED** in part [Docket No. 194]; (9) Plaintiff's Motion to Withdraw or Amend Defendants' Request for Admission No. 1 is **MOOT** [Docket No. 254]; (10) Defendants' Motion to Exclude References to Earlier Opinion is **GRANTED** [Docket No. 198]; (11) Plaintiff's Motion to

Exclude Reference to the Court's Order and Opinion on Summary Judgment During Examination of Witnesses and in Argument to the Jury is **GRANTED** [Docket No. 211]; (12) Plaintiff's Motion to Seal the Courtroom and Seal the Trial Transcript is **GRANTED** in part and **DENIED** in part [Docket No. 210]; (13) Plaintiff's Motion to Exclude Evidence Relating to Plaintiff's Settlement with Professional Direct Agency, Inc. ("Pivot") is **GRANTED** [Docket No. 214]; (14) Defendants' Motion to Exclude Evidence of Consideration Received by Certain Witnesses when Swiss re Purchased Midland is **DENIED** [Docket No. 220]; (15) Defendants' Motion for an Adverse Inference regarding Plaintiff's Unproduced Conservation Contracts is **DENIED** [Docket No. 223]; (16) Defendants' Motion to Exclude Evidence of Plaintiff's Litigation Costs, Alleged Harm to Plaintiff's Reputation, and References to "Poisoning" of the Conservation Market is **DENIED** [Docket No. 268].

**IT IS SO ORDERED.**

**s/Algenon L. Marbley**
**ALGENON L. MARBLEY, JUDGE**
**United States District Court**

**DATE: March 27, 2006**